

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00825-CV

**IN THE INTEREST OF C.D.M. AND A.P.**, Children

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-02692
The Honorable Linda A. Rodriguez, Judge Presiding[1]

Opinion by:     Irene Rios, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed: April 24, 2019

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her children, Charles and Andrew.[2] The only issue presented by Mother is whether the evidence is legally and factually sufficient to support the trial court's finding that termination was in the children's best interest. We affirm the trial court's order.

---

[1] The Honorable Linda A. Rodriguez presided over the underlying trial by assignment.

[2] To protect the identity of a minor child in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and to the children using aliases. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). Here, we refer to C.D.M. as "Charles" and A.P. as "Andrew." The trial court's order terminates Mother's parental rights to both Charles and Andrew, as well as Andrew's presumed and alleged fathers' parental rights. Only Mother appeals.

## BACKGROUND

On November 29, 2017, the Texas Department of Family and Protective Services ("Department") filed a petition to terminate parental rights. Department caseworker Ashley Morales[3] testified "[t]he Department sought removal due to ongoing use of methamphetamine by [Mother] … [and] an incident of domestic violence where the children were present." The trial court held a bench trial on October 10, 2018 through October 11, 2018, at which Mother appeared and testified on her own behalf. The trial court signed an order terminating Mother's parental rights to Charles and Andrew on October 26, 2018.

## STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found evidence of four predicate grounds to terminate Mother's parental rights.[4] The trial court also found termination of Mother's parental rights was in the best interest of the children.

---

[3] In the affidavit in support of removal, Morales's first name is identified as "Aisling" but during trial, she identified herself as "Ashley."

[4] The trial court found evidence Mother

> knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children,[;] … engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children,[;] … failed to comply with the provisions of a court order … ; [and] used a controlled substance … in a manner that endangered the health or safety of the children, and (1) failed to complete a court-ordered substance abuse treatment program[,] or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance … [.]

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P).

When reviewing the sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### BEST INTERESTS

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014).

In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Family Code section 263.307(b). *See* TEX. FAM. CODE ANN. § 263.307(b). We also apply the *Holley* factors to our analysis.[5] *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id*. In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dept. of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

---

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.— San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id*.

## DISCUSSION

Mother contends the evidence is legally and factually insufficient to support the trial court's determination that termination of her parental rights is in Charles's and Andrew's best interest.

On November 25, 2017, San Antonio Police Department officers responded to a domestic disturbance call at Mother's residence, where Mother and the children were staying with maternal grandmother. When Morales met with the family, Mother admitted that she used methamphetamine on November 24, 2017, but asserted to Morales that she did not use methamphetamine while the children were in the home.

Morales testified Charles made an outcry of domestic violence regarding the November 25, 2017 domestic disturbance. According to Morales, Mother acknowledged being involved in the altercation on November 25, 2017, but denied any other allegations of domestic violence. Morales further testified that Charles also reported that Mother sold his things and "he was constantly out asking for money … [from] neighbors." Morales stated Charles's outcries were concerning because they showed instability and safety concerns in the home, which were coupled with the dangers of Mother's drug use. Morales testified she offered Mother drug assessment and

services for mental health management. Morales noted Mother attended one appointment at the Center for Health Services, but did not follow through.

Elaine Perez, the Department caseworker assigned to the case following the children's removal, testified she prepared Mother's family service plan. Perez identified the "top three" requirements of Mother's service plan as undergoing a drug assessment and following the recommendations resulting from the assessment; domestic violence prevention classes; and parenting classes. Perez testified that although Mother underwent drug assessment, she did not follow through with the recommendations resulting from the assessment, which were participation in the COPSD[6] program, Alpha Home outpatient counseling, and domestic violence counseling. Perez also testified that Mother attended only one domestic violence class. Mother testified she had followed up with the COPSD classes and had begun outpatient drug treatment. However, this occurred only two weeks prior to the beginning of trial. Mother explained she started late on treatment because she wanted both mental health and drug counseling at the same time rather than separately. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (concluding short duration improvements do not necessarily negate long history of irresponsible choices).

Perez acknowledged Mother completed parenting classes, which were held in Mother's home, and attended 26 of 44 scheduled visitation opportunities. Perez explained that Mother cited transportation problems and suffering from agoraphobia as reasons she was not able to complete her service plan. When asked whether Mother was "supposed to be getting assistance with her agoraphobia" and whether she had, Perez responded "Yes. … Not at the beginning. Here towards the end, she said she went back to her psychiatrist to get medication." Perez testified she provided

---

[6] Co-Occurring Psychiatric and Substance Abuse Disorders

referrals for Mother that were closer to home and also provided Mother with information regarding transportation. Perez stated:

> [F]rom the beginning of the case, I provided resources that the State provides, such as medical transportation, which has a door-to-door service, has a cab service, has a fuel reimbursement service and VIA Trans, which is also a door-to-door service, and none of those programs were — were — none of them were engaged.

Pamela M., Mother's sister, testified she purchased a bus card for Mother when she became aware lack of transportation may be a problem for Mother.

Perez related that in May 2018, she arranged to transport Mother to a scheduled drug test because of Mother's lack of transportation and because Mother had missed all previously scheduled drug tests. Perez testified that she went to Mother's home to pick up Mother. According to Perez, she knocked on the front door several times and waited for approximately ten minutes, but Mother never answered the door. Perez agreed that Mother's lack of parenting ability will continue into the future based upon her failure to engage in services. *In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at *9 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) (holding failure to complete family service plan is indicative of failure to prioritize child).

Mother testified she was diagnosed with agoraphobia in 2011 and had been prescribed medication to help manage her phobia. However, Mother stopped taking her medication for approximately two years; she resumed taking medication in June or July 2018. Mother testified that she is working to overcome her phobia by venturing away from home on short trips and related that if she is not alone, she feels safer. For example, Mother explained she was able to attend Charles's football game because she was accompanied by her sister and was able to take part in a taco plate fundraiser in April because she was not alone and was with friends. Mother testified that she attempted to work through her phobia by requesting permission for someone to attend counseling at Alpha Home with her, but that her request was denied.

According to Mother, she spoke with Charles daily but missed some visitations because the Department-approved monitor did not appear for scheduled visitations. Mother also testified the Department would not allow her to visit the children when she missed drug tests or had a positive result. Pamela M. served as a Department-approved monitor beginning in January 2018 when the previous monitor regularly missed scheduled visitation times. Pamela M. described Mother's visits with the children as appropriate and testified Mother missed six visits due to positive drug test results or missed drug testing. *In re R.B.*, 200 S.W.3d 311, 316 (Tex. App.—Dallas 2006, pet. denied) (indicating that a parent's missed visits serve as an example of acts or omissions indicating termination is in the children's best interests).

Mother acknowledged she had a positive drug test result on May 17, 2018 for methamphetamine but asserted that was the last time she used drugs. Perez testified Mother admitted to drug use and specifically noted two positive drug test results since the May 17, 2018 positive result. When questioned regarding the two most recent positive drug test results, Mother explained one positive result was from prescribed medication and the other "wasn't my urine." According to Perez, Mother claimed the "most recent one" was because of an opiate prescription, but Mother was not able to provide the prescription bottle or any information from her doctor regarding the prescription. Perez also testified that, regarding "the one before that" which was a positive result for cocaine, Mother claimed there must have been a mistake at the clinic because Mother "did not use that type of drug." Pamela M. admitted she was aware Mother had used cocaine in the past. *In re. L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A parent's drug use supports a finding that termination is in the best interest of the child.").

Perez testified the children are placed together with fictive kin in a foster-to-adopt placement. Perez testified Charles is aware of the termination proceedings, but that Andrew is too

young.  According to Perez, Charles stated he understood the complications and expressed that he would like to be with his grandmother.  Charles also indicated he likes the idea of adoption.  Perez described Charles as education-oriented and stated Charles wants to attend college.  Perez testified Charles informed her that his current placement is a more stable environment and that he is happy he has not changed schools during the semester.  Perez related that Charles is no longer taking medication, is calmer, enjoys school, and has improved his grades.

Mother testified she has a bond with her children.  Mother disagreed with the description of Charles as having been parentified, meaning he had taken on the role of parent.  Mother stated she believed Charles looked out for his little brother because Andrew has special needs and is slow with communication.  Mother acknowledged Andrew is doing well in his placement, but expressed her opinion that the child would have improved anyway as he aged and became more socialized.  Mother also expressed her opinion that Charles is not more stable in his current placement.  When asked, Mother admitted she moved the family "at least once a year" and that Charles had attended "maybe five" different schools.  When questioned about her plans for the children, Mother stated her plan is "for me to care for them" and that she "would like for them to come back home, get them into … school and things like that."  *See In re I.A.M.*, No. 04-16-00095-CV, 2016 WL 4208126 at *9 (Tex. App.—San Antonio Aug. 10, 2016, no pet.) (mem. op.) (noting evidence that children expressed their wishes to remain in their current placement when affirming the trial court's best-interest finding); *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (a stable permanent home for a child is an important consideration); *see also In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family-service plan in holding the evidence supported the best-interest finding).

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re H.R.M.*, 209 S.W.3d at 108; *In re J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order terminating Mother's parental rights.

Irene Rios, Justice